Joe Glenn BURKE, Jr. and Mary Burke, Appellants (Plaintiffs Below),

v.

Mark D. WILFONG, Joseph Hulse and Northern Indiana Public Service Company, Inc., Appellees (Defendants Below).

No. 64A04–9304–CV–118.

Court of Appeals of Indiana, Fourth District.

Aug. 16, 1994.

Gary D. Davis, LaPorte, for appellant.

Michael P. Blaize, Heidi B. Jark, Hoeppner Wagner & Evans, Valparaiso, for Joseph Hulse.

Samuel Furlin, Spangler Jennings & Dougherty, Merrillville, for Mark Wilfong.

John McCrum, Eichhorn Eichhorn & Link, Merrillville, for Northern Indiana Public Service Co., Inc.

RATLIFF, Senior Judge.

## STATEMENT OF THE CASE

Joe Glenn Burke, Jr., appeals from a judgment in favor of Mark Wilfong and Joseph

Hulse claiming that worker's compensation is not his exclusive remedy, and that he is entitled to bring a third party claim. We affirm.

## ISSUES

I. Did Burke's injury arise out of and in the course of his employment?

II. Was Burke in the same employ as Wilfong and Hulse?

## FACTS

In early 1991, Joe Glenn Burke, Jr., Joseph Hulse, Michael Antecki and Mark Wilfong were all employed by Hunter Corporation as millwrights. Hunter, a Lake County contractor, had a contract with Northern Indiana Public Service Company, Inc. to repair a turbine at NIPSCO's Schahfer Generating Plant.

At the Schahfer Plant, Hunter employees were required to park their cars in a parking lot set aside for contracted employees. This parking lot was only accessible by Schahfer Road, a dual lane road on NIPSCO's property which ran between a guard shack at the main entrance and the contractor's parking lot. Schahfer Road, which is privately owned and maintained by NIPSCO, is only accessible to NIPSCO employees, contracted employees and persons conducting business with NIPSCO. To gain access to Schahfer Road, Hunter employees were required to sign in with NIPSCO guards located at the guard shack.

At approximately 7:20 a.m. on January 14, 1991, Burke and Antecki were passengers in a car owned and driven by Hulse. All three were scheduled to work the 7:30 a.m. to 4:00 p.m. shift. They had checked in at the guard's shack, and they were driving south on Schahfer Road toward the Hunter employee's parking lot. Wilfong had just completed the midnight to 8:00 a.m. shift. He had been allowed to clock out at 7:15 a.m. with other employees working that shift, and he was driving his car north on Schahfer Road toward the guard's shack. Wilfong's vehicle slid due to snow, ice and a dip in the road, crossed the center line and struck Hulse's vehicle. Burke was injured in the accident.

Burke and his wife, Mary, filed a personal injury action against Hulse and Wilfong alleging that both drivers were negligent in the operation of their vehicles. The Burkes later amended their complaint to include NIPSCO as a defendant. Hulse and Wilfong filed summary judgment motions arguing that Burke could not bring a civil suit against them because the sole jurisdiction of the cause was with the Indiana Worker's Compensation Board. The trial court granted Hulse and Wilfong's motions for summary judgment after finding that the Burke's exclusive remedy is under the Indiana Worker's Compensation Act.

■ Burke now contends that the trial court's grant of summary judgment was erroneous because his injuries did not arise out of and in the course of his employment.[1] Therefore, according to Burke, worker's compensation is not his exclusive remedy, and he is entitled to bring this third party claim.

1. We note that recently in *Perry v. Stitzer Buick*, 1994 WL 282902 (1994), Ind., 637 N.E.2d 1282 and *Foshee v. Shoney's Inc.*, 1994 WL 282900 (Ind.) (1994), Ind., 637 N.E.2d 1277, our Supreme Court expressly disapproved of the use of a motion for summary judgment to dispose of arguments, such as Hulse and Wilfong's, which assert that a plaintiff's claim is barred by the exclusive remedy provision in the Indiana Worker's Compensation Act. In each case, the Supreme Court noted that a summary judgment constitutes an adjudication on the merits which bars the subsequent assertion of the plaintiff's claim. Similarly, a motion for a judgment on the pleadings is also undesirable since it may be converted into a motion for summary judgment through the use of supplementary materials. Therefore, the Supreme Court held that arguments such as Hulse and Wilfong's should instead be asserted through the use of a motion to dismiss for lack of subject matter jurisdiction where a dismissal would merely hold the plaintiff's claim in abatement and would not bar the plaintiff from seeking administrative remedies.

Here, Hulse and Wilfong improperly raised their arguments in the trial court with motions for summary judgment. Nevertheless, in the interest of judicial economy we will address the merits of Burke's arguments on appeal because no factual dispute exists and the result will be the same—regardless of the manner in which Hulse and Wilfong's arguments were raised. In effect, then, we will treat Hulse and Wilfong's motions for summary judgment as motions for lack of subject matter jurisdiction.

Burke raises two issues for our review: 1) whether his injury arose out of and in the course of his employment, and 2) whether he was in the same employ as Wilfong and Hulse.

## DECISION

As a preliminary matter we note that although the trial court granted Hulse and Wilfong's motions for summary judgment, NIPSCO was still a party to the action. Ind.Trial Rule 56(C) states in pertinent part:

A summary judgment with respect to less than all the.... parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the ... parties.

The trial court's order does not in writing expressly determine that there is no just reason for delay and it does not in writing expressly direct entry of judgment as to less than all the parties. Thus, according to T.R. 56(C), this is an interlocutory order and not a final judgment. As a result, the order would not normally be appealable until a final judgment is rendered. However, according to Appellate Rule 4(E):

No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, ... pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the court below.

Thus, we will exercise our discretion to pass upon the severable adjudicated issues which pertain to Hulse and Wilfong and we will consider the merits of this case in order to facilitate a speedy disposition of it. *See Pekin Insurance Co. v. Charlie Rowe Chevrolet, Inc.* (1990), Ind.App., 556 N.E.2d 1367; *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665. We now proceed to address the specific issues.

On appeal from a summary judgment, we apply the same standard applicable in the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562. We must determine whether the designated record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Rational assertions of fact and reasonable inferences therefrom are deemed to be true, and any doubt as to a fact, or an inference to be drawn is resolved in favor of the nonmoving party. *Malachowski, supra.*

ISSUE I. DID BURKE'S INJURY ARISE OUT OF AND IN THE COURSE OF HIS EMPLOYMENT?

The Indiana Worker's Compensation Act provides compensation to employees for injuries which arise out of and in the course of their employment.[2] The rights and remedies under the Act are exclusive and exclude all other rights and remedies of such employees.[3] Whether an injury arises out of and in the course of employment depends upon the facts and circumstances of each case. *Sanchez v. Hamara* (1989), Ind.App., 534 N.E.2d 756, 758, *trans. denied; L.W. Edison, Inc. v. Teagarden* (1981), Ind.App., 423 N.E.2d 709, 711. However, when the facts relating to the question of liability under the Act are undisputed and when such facts lead to only one inference, the issue becomes one of law for the courts to decide. *Sanchez, supra; O'Dell v. State Farm Mut. Auto Ins. Co.* (1977), 173 Ind.App. 106, 362 N.E.2d 862, 866. The facts of this case relating to the question of liability under the Act are not in dispute. Since Burke's injury arose out of and in the course of his employment, worker's compensation is his exclusive remedy. We find ample support for our conclusion by reference to our case law on this subject.

The phrase "in the course of employment" refers to the time, place and circumstances surrounding the accident. *Blaw–Knox Foundry and Mill Machinery, Inc. v.*

---

2. Ind.Code 22–3–2–2

3. Ind.Code 22–3–2–6

*Dacus* (1987), Ind.App., 505 N.E.2d 101, 102, *reh'g. denied, trans. denied.* Specifically, "(a)n accident occurs in the course of employment when it takes place within the period of employment, at a place where an employee may reasonably be, and while he is fulfilling the duties of his employment or is engaged in doing something incidental thereto." *Wayne Adams Buick, Inc. v. Ference* (1981), Ind. App., 421 N.E.2d 733, 735.

Indiana courts previously have held that the period of employment encompasses a reasonable time before and after the employee engages in work. *Goldstone v. Kozma* (1971), 149 Ind.App. 626, 274 N.E.2d 304. They have also held that parking lots and private drives within the employer's supervision are clearly extensions of the employer's operating premises, *Ward v. Tillman* (1979), 179 Ind.App. 626, 386 N.E.2d 1003, 1005; *O'Dell, supra,* and thus a place where an employee reasonably may be. Lastly, the courts have held that employees are doing something incidental to their employment while they are on their employer's premises. *Ward, supra.*

Burke's injury occurred ten minutes before his shift at the plant was scheduled to begin. Thus, under the above-discussed authority, he was injured within the period of his employment. In addition, the accident occurred on a private employee access road which NIPSCO owned and maintained. This road was an extension of NIPSCO's operating premises and a place where Burke might reasonably be. Burke's injury clearly occurred in the course of his employment.

■■■ An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or service performed by the injured employee. *Thiellen v. Graves* (1988), Ind.App., 530 N.E.2d 765, 767. This causal relationship is established when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it. *Id.* Indiana courts have held that accidents resulting from employees arriving at and leaving from an employer's premises are employment related risks. *Thiellen, supra; Ward, supra.* Because the accident which caused Burke's injury occurred on NIPSCO's prem-

ises while Burke was arriving for work, Burke's injury arose out of his employment.

■■■ Burke argues that because his employer, Hunter, did not own the road, this rule does not apply. However, he cites no authority for this proposition. In fact, according to our case law, the fact that the employer does not own the premises on which the employee is injured does not preclude the exclusive remedy of the worker's compensation act. *Goldstone, supra.* (employee who slipped and fell in a parking lot adjacent to the building in which she worked as she was getting into a friend's car to go to lunch was entitled to worker's compensation benefits even though her employer did not own the parking lot).

In addition, courts in other jurisdictions have held that when a contractor's employee is performing work pursuant to a contract on another company's property, that property is considered the employer's property for worker's compensation purposes. *Downey v. Vanderlinde Electric Corp.* (1950), 276 App. Div. 1044, 95 N.Y.S.2d 685 ("The place where the employer's contract was being performed is deemed the employer's plant. It is, therefore, to be treated, in its facilities for ingress and egress, as would such facilities of the employer's own plant, while the work was in progress.") (citations omitted).

In a more recent opinion, the Ohio Court of Appeals held that the administratrix of the estate of a contractor's employee who was killed in an automobile accident on a private employee access road was entitled to worker's compensation benefits. *Faber v. R.J. Frazier Co.* (1991), 72 Ohio App.3d 9, 593 N.E.2d 410. In *Faber,* the decedent Faber was employed by Frazier, a contractor which supplied general tradesmen for work at a nuclear plant owned by Cleveland Electric Illuminating Company. Faber completed his shift, clocked out, and was exiting CEI's premises on an employee access road—owned and maintained by CEI—when his automobile was struck by a car driven by the employee of another contractor. The court found the CEI property, including the plant, parking lot, and access road, comprised the employment premises of Faber regardless of

actual ownership and control. *Id.* 593 N.E.2d at 413. As a result, the court found Faber's death arose out of and in the course of his employment. *Id.* at 414. *Faber* supports our conclusion that Burke's injury arose out of and in the course of his employment despite the fact that his employer, Hunter, did not own the employee access road.

Burke also argues that the risk of injury was not exclusive to the employment relationship because an employee's spouse has travelled the road in the past. In making this argument, Burke attempts to analogize the facts of his case to the facts of *Segally v. Ancerys*, (1985), Ind.App., 486 N.E.2d 578, *reh'g. denied.* In *Segally*, a car driven by Ancerys was struck from behind by a car driven by Segally. The accident occurred at the entrance to United States Steel Corporation where both of the drivers were employed. Ancerys filed a personal injury action against Segally, and Segally filed a motion for summary judgment. Segally's motion was denied because there were genuine issues of material fact concerning Ancerys' employment status and the scope of his employment at the time of the accident. Segally struck Ancerys at the gatehouse of the U.S. Steel Plant, and without more information, the court was unable to conclude whether the risk to Ancerys at the gatehouse was common to workers and non-workers alike. This issue of material fact is not present in Burke's case. Wilfong struck the car in which Burke was a passenger on NIPSCO's private employee access road after Burke had signed in at the gatehouse. Because Schahfer Road is only accessible to NIPSCO employees, contracted employees and persons conducting business with NIPSCO, the risk to Burke on Schahfer Road was not common to workers and non-workers alike. In addition, in *Segally*, Ancerys arrived at the gatehouse one hour and fifteen minutes prior to his starting time. His early arrival left open the possibility that he had arrived early for personal reasons since there was no other information in the record addressing this issue. Burke, on the other hand, did not arrive to work early on the day of the accident. In fact, he arrived at work at his customary time and he was injured just ten minutes prior to the starting time of his shift.

## II. WAS BURKE IN THE SAME EMPLOY AS WILFONG AND HULSE?

The mere fact that Burke's injuries are covered by worker's compensation does not automatically bar him from pursuing an action against a third party. *Thiellen, supra.* Worker's compensation is Burke's exclusive remedy to the extent that it bars other claims against the employer, and in some cases, fellow employees. However, the Act does permit actions against third party tortfeasors.

According to Ind.Code 22–3–2–13:

Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in *some other person than the employer and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee … may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. (Emphasis added).

Traditionally, the test used to determine whether the parties were "in the same employ" was whether the denominated defendant could obtain compensation benefits in the same or similar circumstances. *O'Dell, supra.* However, in *Thiellen v. Graves, supra,* this court added an additional requirement to the interpretation of this phrase. According to *Thiellen,* the legislative intent behind the phrase is to require some nexus between the employment of the third party and the injury rather than merely the third party's status as sharing a common employer with the injured employee. *Id.* at 767. The court in *Thiellen* specifically disproved of the *O'Dell* language as overly broad.

However, in a recently decided case, this court has declined to follow the *Thiellen* requirements. *Weldy v. Kline* (1993), Ind. App., 616 N.E.2d 398, 403, *reh'g. denied.* In *Weldy,* this court stated that the nexus requirement is unnecessarily repetitive because cases interpreting the Act already provide

for such a requirement, and adding to it again would serve no purpose except to create a new category of persons liable to suit outside of the protections of the exclusivity protections of the Act. *Id.*

Under either test, Burke, Hulse and Wilfong were all in the same employ. Under the *O'Dell* test, the denominated defendants, Hulse and Wilfong, could have obtained compensation benefits under the same or similar circumstances. All three of the men worked at the Schahfer Plant and, as employees, they were identically situated. Under the *Thiellen* test, the act which caused Burke's injury arose out of and occurred in the course of Wilfong and Hulse's employment. Thus, Burke was in the same employ as Wilfong and Hulse, and worker's compensation is his exclusive remedy.[4]

We note that Burke's third party tort claim against NIPSCO remains viable. This decision in no way affects that claim.

Affirmed.

CHEZEM and KIRSCH, JJ., concurring.

---

4. We observe that Burke's complaint includes a loss of consortium claim. Although Burke does not raise the issue whether Mrs. Burke would be entitled to a loss of consortium claim for damages if her husband's exclusive remedy is with the worker's compensation board, we note that she would not. As Wilfong points out, the law on the issue is well-settled. The exclusivity section of the Worker's Compensation Act bars a cause of action for loss of consortium by the spouse of an employee injured at work. *Nelson v. Denkins* (1992), Ind.App., 598 N.E.2d 558, 563; *Greene v. Westinghouse Electric Corp.* (1991), Ind.App., 573 N.E.2d 452, 456, *reh'g. denied, trans. denied.* As a result, Mrs. Burke's loss of consortium claim is barred.