June ROGERS, Appellant–Plaintiff,

v.

BETHLEHEM STEEL CORPORATION,
Appellee–Defendant.

No. 93A02–9410–EX–639.

Court of Appeals of Indiana.

Aug. 28, 1995.

James J. Nagy, Munster, for appellant.

Larry G. Evans, Lauren K. Kroeger, Hoeppner, Wagner & Evans, Valparaiso, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff June Rogers, the surviving widow of Joseph P. Rogers, appeals from a decision of the Full Worker's Compensation Board ("Board") denying recovery of certain death and statutory burial benefits.

On September 24, 1992, Joseph was murdered at his place of employment, Bethlehem Steel Corporation ("Bethlehem Steel"), which is located in Porter County, Indiana. Joseph's death was caused by blunt force trauma to his head. A jury found Garry Moore, also an employee of Bethlehem Steel, guilty of robbing and murdering Joseph. Joseph was known to carry a large sum of money and had loaned money to various persons in the past, including Moore. Joseph's wallet was not found at the scene of the murder.

Subsequently, a dispute arose between Rogers, as the surviving widow of Joseph, and Bethlehem Steel regarding the benefits payable under the Indiana Worker's Compensation Act. On June 7, 1992, Rogers filed an application for adjustment of her claim with the Board. The case was submitted for hearing before an individual hearing member of the Board. Rogers and Bethlehem Steel stipulated to various facts which included:

> "5. At the time of his death, Joseph P. Rogers was found in a place where he was expected to be when fulfilling the duties of his employment for the defendant Bethlehem Steel Corporation.
>
> 6. Joseph Rogers' death occurred while he was at work and therefore occurred in the course of his employment."

The hearing officer denied Rogers' claim. Rogers then filed an application for review by the Full Board on June 17, 1994. The case was submitted for hearing before the Board which in an order dated September 27, 1994, affirmed the decision of the single hearing member. Rogers now appeals.

The sole issue presented for review is whether the death of Joseph arose out of his

employment with Bethlehem Steel, thus, bringing Rogers' claim within the purview of the Worker's Compensation Act (the "Act"), IND.CODE § 22–3–2 *et seq.*

■ In challenging the Board's decision, Rogers confronts a strong standard of review. This Court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Four Star Fabricators, Inc. v. Barrett* (1994), Ind.App., 638 N.E.2d 792, 794; *Jablonski v. Inland Steel Co.* (1991), Ind. App., 575 N.E.2d 1039, 1041, *trans. denied;* *K–Mart Corp. v. Novak* (1988), Ind.App., 521 N.E.2d 1346, 1348, *trans. denied.* We must disregard all unfavorable evidence and must examine only that evidence and the reasonable inferences therefrom which support the Board's findings. *Four Star Fabricators, Inc.,* 638 N.E.2d at 794. Further, this Court neither reweighs the evidence nor judges the witness's credibility, as these are functions of the Board. *Id.*

■ Rogers argues that the Board erred by determining Joseph's death did not "arise out of" his employment with Bethlehem Steel. Rogers has the burden of proving the applicability of the Act. *Jablonski,* 575 N.E.2d at 1041; *Lona v. Sosa* (1981), Ind.App., 420 N.E.2d 890, 894, *trans. denied.* To recover under the Act, a claimant must establish that an injury or death occurred "by accident arising out of and in the course of employment." IND.CODE § 22–3–2–2; *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 973.

■ Rogers suggests that by stipulating to the fact that Joseph's death occurred in the course of employment, Bethlehem Steel must also have conceded that his death arose out his employment. Rogers fails to recognize that "in the course of" and "arising out of" are two separate elements. *See K–Mart,* 521 N.E.2d at 1348. Under the Act, an injury or death to be compensable must both arise out of and be in the course of employment, and neither alone is sufficient. *Olinger Const. Co. v. Mosbey* (1981), Ind.App., 427 N.E.2d 910, 912, *trans. denied; Tom Joyce 7 Up Co. v. Layman* (1942), 112 Ind.App. 369,

373, 44 N.E.2d 998, 999. The words "in the course of" refer to the time, place and circumstances under which the injury occurred. Bethlehem Steel does not dispute the fact Joseph was in the course of his employment at the time of his death. Bethlehem Steel also does not dispute the fact Joseph's death, although caused by the intentional acts of a co-employee, was an "accident" within the meaning of the Act. *See Evans,* 491 N.E.2d at 975 ("injury or death by accident," as used in the Act means unexpected injury or death). These stipulations, however, do not necessarily place Rogers' claim within the Act; Joseph's death must have also "arisen out of" his employment.

■ The words "arising out of" refer to the origin or cause and are descriptive of the accident's character. *Olinger,* 427 N.E.2d at 912. An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Burke v. Wilfong* (1994), Ind.App., 638 N.E.2d 865, 869. This causal relationship is established "when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it." *Id.* However, it is not necessary that the injury should have been expected or foreseen. *Blaw–Knox Foundry & Mill Mach. v. Dacus* (1987), Ind.App., 505 N.E.2d 101, 102–103, *trans. denied.*

■ Risks causing injury or death to an employee may be divided into three categories: 1) risks distinctly associated with the employment, 2) risks personal to the claimant, and 3) "neutral" risks which have no particular employment or personal character. *K–Mart,* 521 N.E.2d at 1349, n. 1, *citing* Larson, *Workmen's Compensation Law* § 6.50 and § 11.30; *Peavler v. Mitchell & Scott Machine Co.* (1994), Ind.App., 638 N.E.2d 879, 881, *trans. denied.* As explained in *Peavler:*

> "Generally, the risks that fall in the first and third categories are covered by the Indiana Worker's Compensation Act. However, harms which arise in the second category, from risks personal to the claimant/employee, are universally noncompensable. If the employee has a mortal per-

sonal enemy who finds and murders the employee while the employee is at work, the employment cannot be said to have any causal relationship to the death. When the animosity or dispute that culminates in an assault on the employee is imported into the workplace from the claimant's domestic or private life, and is not exacerbated by the employment, the assault cannot be said to arise out of the employment under any circumstances."

*Id.* (Citations omitted.).

As a general rule, an injury, by an employee, sustained in the course of his employment in a fight with a co-employee which does not arise out of the employment is not compensable under the Act. 30 I.L.E. *Workmen's Compensation* § 130; *see also Peavler,* 638 N.E.2d at 881 (personal squabble with a third person that culminates into an assault not compensable). On the other hand, an assault by a co-employee which arises out of the employment, where the assault is reasonably incidental to the work and where a disagreement or quarrel between co-employees arises out of the work in which they are engaged, and as a result one employee assaults and injuries the other, it may be inferred that the injury arose out of the employment. 30 I.L.E. *Workmen's Compensation* § 130.

In the present case, Joseph was known to carry large sums of money and had in the past loaned money to various persons, including Garry Moore. Joseph was not required to carry or loan money to any of his co-workers as a condition of his employment at Bethlehem Steel. Further, co-employee Jean Collins observed Moore and Joseph arguing over something, which was unrelated to the job and appeared to be a personal matter, ten days prior to Joseph's death. The transcript from Moore's criminal trial, which was admitted into evidence before the Board, also revealed that prior to the murder, Moore told Willie Martin that he was going to harm Joseph by using a bar to "bust him in his head." The evidence is sufficient to support the Board's conclusion that Joseph's death resulted from a risk personal to himself, i.e., the carrying and loaning of large sums of money, and it did not arise out of his employment with Bethlehem Steel. The judgment of the trial court is affirmed.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.